IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL WINKFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-01182-STA-egb |
| | ) | |
| CHERRY LINDAMOOD, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DENYING § 2254 PETITION,
DENYING MOTION FOR SUBPOENA,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKIN IN GOOD FAITH,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Samuel Winkfield, a Tennessee state prisoner, has filed a petition under 28 U.S.C. § 2254 seeking habeas corpus relief ("petition"). (Am. Pet., ECF Nos. 9 & 9-1.) For the reasons that follow, the petition is **DENIED**.

## BACKGROUND

### A.  State Court Proceedins

On January 2, 2007, a grand jury in Madison County, Tennessee, returned an indictment charging Winkfield with first degree murder; murder in perpetration of a felony, namely, aggravated robbery; especially aggravated kidnapping; tampering with evidence; and conspiring to tamper with evidence. *State v. Winkfield*, No. W2008-01347-CCA-R3-CD, 2010 WL 796917, at *1 (Tenn. Crim. App. Mar. 9, 2010), *app. den.* (Tenn. Aug. 25, 2010).

Petitioner's first trial in July of 2007 resulted in a mistrial. A second jury trial on the charges commenced in the Circuit Court for Madison County, Tennessee, on January 22,

2008.  The jury heard evidence that on October 19, 2006, the defendant, who lived in a house with James Charles Haney and Terrance McGee, shot Haney over a dispute about drugs. McGee did not see the shooting, but testified as to Winkfield's conduct and demeanor following Haney's death.  Larry Futrell, a fellow inmate of Winkfield's at the county jail, testified that Winkfield confessed to shooting Haney.  *Winkfield*, 2010 WL 796917, at *1-4.

On January 25, 2008, the jury announced that it was deadlocked on the kidnapping charge, but convicted Winkfield of second degree murder and tampering with evidence.  *Id*. at *4.  The trial judge sentenced him to a term of imprisonment of twenty-five years at 100% for the second degree murder and to a concurrent term of six years as a Range I offender for tampering with evidence.  *Id.* at *5.  The TCCA affirmed the convictions and sentence, and the Tennessee Supreme Court denied permission to appeal.  *Id.* at *1.

On August 15, 2011, Winkfield filed a *pro se* post-conviction petition in the Madison County Circuit Court.  The post-conviction court held an evidentiary hearing on the petition, as amended, and denied relief.  The TCCA affirmed, and the Tennessee Supreme Court denied permission to appeal. *Winkfield v. State*, No. W2012-02413-CCA-R3-PC, 2013 WL 6001929 (Tenn. Crim. App. Nov. 8, 2013), *app. den.* (Tenn. Apr. 11, 2014).

## B.  First and Second Habeas Petitions

On May 5, 2014, Winkfield filed his first *pro se* § 2254 petition, which was docketed as the case-initiating pleading in Case No. 14-cv-01102 ("first petition" or "May 2014 petition").  (Pet., *Winkfield v. Donahue*, No. 1:14-cv-01102-JDB-egb (W.D. Tenn. May. 5, 2014), ECF No. 1.)  On May 8, 2014, the Court ordered Petitioner to either file an *in forma pauperis* application or pay the $5.00 habeas filing fee within thirty days. (Order, *id.,* ECF No. 3.)  Because Winkfield failed to comply with the order, the Court dismissed the petition

2

for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (Order, *id.*, ECF No. 4.)  The Court later clarified that the dismissal was without prejudice. (Order, *id.*, ECF No. 7.)  Winkfield mounted an unsuccessful challenge to the dismissal of his first petition, asking for reconsideration of the dismissal order and filing an appeal.  (*See* Mo. Reconsider, *id.*, ECF No. 9; *Winkfield v Lindamood*, No. 16-5662 (6th Cir. Nov. 10, 2016)).

On August 1, 2014, Winkfield commenced the present case with the filing of a second *pro se* §2254 petition ("second petition" or "August 2014 petition").  (Pet., ECF No. 1.)[1]  On December 9, 2014, Winkfield submitted his amended petition.  (Am. Pet., ECF Nos. 9 and 9-1.) The amended petition restates Claims 1 through 5 of the August 2014 petition, and raises two new issues (Claims 6 and 7):

> Claim 1:  The TCCA's determination that the evidence was sufficient to sustain Petitioner's convictions is contrary to *Jackson v. Virginia*, 443 U.S. 307 (1979).  (Am. Pet., ECF No. 9 at 5);
>
> Claim 2:  The TCCA's determination that the trial court did not err in allowing the prosecution to introduce the defendant's prior testimony is contrary to *Brady v. Maryland*, 373 U.S. 83 (1963).  (*Id.* at 7);
>
> Claim 3:  The TCCA's affirmance of the trial court's exclusion of a witnesses' MySpace page was contrary to the Sixth Amendment's Confrontation Clause and *Brady v. Maryland*, 373 U.S. at 87.  (*Id.* at 8);
>
> Claim 4:  The TCCA's affirmance of the sentence is contrary to *Apprendi v. New Jersey*, 530 U.S. 66 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  (*Id.* at 9);
>
> Claim 5:  The TCCA's determination that Petitioner's trial attorneys were

---

[1]  The second petition, which is now before the Court, is not "second or successive" for purposes of 28 U.S.C. § 2244(b), since the first petition was denied without prejudice for Petitioner's failure to pay the filing fee or submit an *in forma pauperis* application.  *See Melvin v. Hudson*, No. 1:07 CV 1324, 2008 WL 3166182, at *1 (N.D. Ohio Aug. 4, 2008) (petition, which was filed after first petition was dismissed for failure to pay filing fee, was "not a second or successive petition under § 2244(b)") (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998) (dicta)).

not ineffective in numerous respects was contrary to clearly established Supreme Court precedent (*Id.* at 11);

Claim 6:  Post-conviction counsel rendered ineffective assistance by defaulting Petitioner's prosecutorial misconduct claim (Am. Pet., ECF No. 9-1 at 1);

Claim 7:  Trial counsel was ineffective for failing to object to the prosecutor's misconduct.  (*Id.* at 5.)

## C.  Court's Denial of Motion to Dismiss Claims as Untimely

On January 29, 2015, Respondent filed a motion to dismiss the amended petition as untimely.  (Mot. to Dismiss, ECF No. 14.)  The motion was brought pursuant to Federal Rule of Civil Procedure 12(b)(6), and alternatively, Rule 56.  Respondent argued that the August 2014 petition, as supplemented with additional claims in December of 2014, was time barred.  Winkfield opposed the motion, arguing that he was not able to file the petition in a timely manner because his prison was on lockdown from July 10, 2014 until July 29, 2014.  (Resp., ECF No. 18.)  He insisted that he was entitled to equitable tolling.  (*Id.* at 3-5.)

The Court thereafter directed the State to file a reply addressing the issue of equitable tolling. (Order, ECF No. 19.)  Respondent was instructed that the reply should be accompanied by a factual affidavit responding to Petitioner's allegations about a lockdown.  (*Id.* at 5.) Petitioner was advised that he could respond to any proof offered by Respondent within twenty-one days of service.  (*Id.*)

On August 11, 2015, Respondent filed a reply, which was accompanied by the affidavit of Byron Ponds, the Chief of Security at the Hardeman County Correctional Facility, where Winkfield was confined when he submitted his petition.  (Reply, ECF No. 20; Pond Aff., ECF No. 20-1.)  The affidavit stated that Petitioner's unit was not on lockdown between the dates of July 10, 2014 and July 29, 2014.  (Ponds Aff., ECF No. 20-1 at 1.)

Winkfield filed a sur-reply, accompanied by a letter addressed to the Court. (Sur-reply, ECF No. 22; Ltr., ECF No. 22-2.) The inmate conceded that, contrary to his earlier allegation, his prison had not been on lockdown the last two weeks of July. (Ltr., ECF No. 22-2 at 1.) He explained that the reply, which had been filed by an inmate legal advisor, had not been reviewed by the Petitioner before the filing deadline due to time constraints. (*Id.*) He nevertheless maintained that he is entitled to equitable tolling. He alleged that he submitted his *in forma pauperis* application to a prison staff member named "Ms. Smith," who was to provide a copy of his trust fund statement. (Sur-reply, ECF No. 22 at 1.) According to Petitioner, Ms. Smith did not return the completed application to him "in a timely manner," which caused him to miss the Court's deadline. (*Id.*)

The Court denied the motion to dismiss, without prejudice, on the ground that the issue of equitable tolling was not resolvable on the pleadings and record submitted. (Order, ECF No. 23.) The Court held that, "[i]f Winkfield's first § 2254 Petition, which was presented in Case Number 14-1102, was dismissed because prison officials unreasonably delayed in processing his *in forma pauperis* materials or mailing the habeas filing fee, he would be entitled to equitable tolling." (*Id.* at 12.)

## DISCUSSION

On October 15, 2015, Respondent filed its answer to the amended petition, arguing that all of the claims should be dismissed as untimely. (Ans., ECF No. 24 at 3-5.) In the alternative, the State contends that some of the claims are procedurally defaulted and all are without merit. (*Id.* at 15-31.)

By order of Court, Winkfield was allowed twenty-eight days to respond to the answer. (Order, ECF No. 23 at 12.) He did not do so, and did not seek an extension of time. Two months after the answer was filed, he filed a motion for a subpoena to secure certain prison

mail records.  (Mo. Subpoena, ECF No. 26.)    Respondent filed a brief in opposition to the

motion.  (Br. Opp., ECF No. 27.)

For the following reasons, the Court holds that the claims are untimely and that Petitioner

is not entitled to equitable tolling.  The Court also finds that Winkfield procedurally defaulted

some of the claims and that others are without merit.

## A.  Statute of Limitations and Equitable Tolling

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a § 2254

petition is subject to a one-year statute of limitations.  28 U.S.C. § 2244(d)(1).  The limitations

period begins to run from the latest of four possible dates:

> (A)    the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C)    the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

*Id.*

In this case, § 2244(d)(1)(A) applies, which means that Winkfield had one-year from the

date on which his judgment of conviction became final to file his habeas petition.  Taking into

account statutory tolling under 28 U.S.C. § 2244(d)(2), the last day Winkfield could timely file

his § 2254 petition was July 21, 2014.  The date is arrived at as follows.

First, Petitioner's judgment of conviction became final on November 23, 2010. Winkfield appealed his conviction to the Tennessee Supreme Court, but did not appeal to the United States Supreme Court. His judgment of conviction thus became final when the time for appealing to the United States Supreme Court expired, which was ninety days after the Tennessee Supreme Court denied permission to appeal. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). Permission to appeal was denied on August 25, 2010, and ninety days from that date was November 23, 2010.

Second, the limitations period for Petitioner's federal habeas claim began to run on November 24, 2010, the day after his conviction became final, *see id.* at 285-86, and ran for two-hundred and sixty-five days before being tolled during the pendency of his state post-conviction proceedings. The one-year limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending . . . ." 28 U.S.C. § 2244(d)(2). Here, Winkfield's post-conviction proceedings ran from August 15, 2011, the date he signed his petition and placed it into the prison mail system (P-C Pet., ECF No. 16-21 at 24)[2], to April 11, 2014, the date the Tennessee Supreme Court denied permission to appeal.

Finally, the last day of the limitations period was July 21, 2014. When the limitations "clock" resumed after Petitioner's state post-convictions proceedings concluded, one-hundred days remained in the limitations period. One-hundred days after April 11, 2014, was Sunday July 20, 2014. Under Fed. R. Civ. P. 6(a), if a deadline for filing in the district court falls on a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday," which in this case was Monday July 21, 2014.

---

[2] *Goins v. Sanders*, 206 F. App'x 497, n.1 (6th Cir. 2006) (per curiam) (courts are to treat pro se prisoner complaints "as filed on the date [the prisoner] signed it.")

Giving Petitioner the benefit of the prison mailbox rule, the petition was filed on July 30, 2014.[3] Winkfield therefore filed his petition nine days after the limitations period expired on July 21, 2014. His December 2014 amendment to the petition, in which he asserts two additional claims, was filed more than four months after the limitations period expired.

The one-year statute of limitations in 28 U.S.C. § 2244(d) is not a jurisdictional bar and is subject to equitable tolling under extraordinary circumstances. *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003). "Traditional" equitable tolling requires the petitioner to show that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 646, 649 (internal quotation marks omitted). A causation requirement is included in the extraordinary circumstance element, as the circumstance must have "caused [the] litigant's delay." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016); *see also United States v. Garcia-Guia*, No. 3:07-cr-81, 2013 WL 5329232, at *2 (S.D. Ohio Sept. 20, 2013) ("A defendant must prove a causal connection between the alleged lockdowns and his inability to timely file his motion.").

The party seeking equitable tolling bears the burden of establishing the elements of diligence and extraordinary circumstance. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). In determining whether the burden has been met, a court must be mindful of the Sixth Circuit's "repeated[] caution[] that equitable tolling should be granted 'sparingly.'" *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (quoting *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006)).

---

[3] Petitioner did not sign his petition, but did sign a certificate of service on July 30, 2014, which was received by the Clerk of Court the same day and in the same envelope as the petition. For present purposes, the Court will give Petitioner the benefit of the July 30 date.

As noted, the Court has already held that the limitations period should be equitably tolled if Winkfield can demonstrate that his first petition "was dismissed because prison officials unreasonably delayed in processing his *in forma pauperis* materials or mailing the habeas filing fee." (Order, ECF No. 23 at 12.)[4]  *See e.g.*, *Melvin v. Hudson*, No. 1:07 CV 1324, 2008 WL 3166182, at *1 (N.D. Ohio Aug. 4, 2008) (addressing whether equitable tolling as to late filing of second petition was warranted where prison officials failed to mail filing fee for first petition, which resulted in dismissal).  In assessing whether Petitioner is entitled to equitable tolling, the Court must first address his motion for a subpoena to secure prison mail records.  (Mo. Subpoena, ECF No. 26.)

Petitioner requests that the Court issue a subpoena to the prison for "his log-book mail-room record of outgoing legal mail in July and August of 2014." (*Id.* at 1.)  He asserts that "such subpoena is necessary and will show the materiality for this record to aid in his defense . . . . [and] the . . . mailroom record will relieve the Petitioner of any burden or deficiency so that further hearings can proceed in this matter." (*Id.* at 1-2.)

The motion is not well taken.  First, Petitioner was dilatory in seeking the records and has not explained his delay.  In its order of September 15, 2015, the Court identified for the parties the central factual issue in the equitable tolling inquiry: the conduct of the prison staff in handling Petitioner's IFP application or filing fee.  Nevertheless, Petitioner did not file his request for the mail records until *two months after* Respondent filed its answer.  Petitioner was given twenty-eight days to respond to the answer, and was warned that any motion for

---

[4]  In addition to asserting that he is entitled to equitable tolling, Petitioner alleges in his amended petition that his "actual innocence" overcomes his late filing.  (Am. Pet., ECF No. 9 at 14.)  However, he does not develop the argument.  In particular, he has not pointed to any new evidence that would render it more likely than not that no reasonable juror would have found him guilty of his crimes beyond a reasonable doubt.  *See McQuiggin v. Perkins,* 133 S.Ct. 1924, 1930–31 (2013).

extension of time must be filed within that twenty-eight-day window.  (Order, ECF No. 23 at

12.)  Winkfield did not file a motion for extension of time and has not explained his lack of

diligence in seeking the records.

Second, as Respondent points out, Petitioner has not established good cause for the

discovery.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled

to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts

("Habeas R.") provides, in pertinent part, that "[a] judge may, for good cause, authorize a

party to conduct discovery . . . ."  Habeas R. 6(a).  Rule 6(b) requires that the "party

requesting discovery . . . provide reasons for the request."  Habeas R. 6(b).

Petitioner has not explained how the mail records would help him establish that he

submitted an IFP application to Ms. Smith, that she failed to return the completed application

to him, and that he was diligent in trying to get the form back from her.  He also does not

explain how the mail records for July and August would show that he placed the filing fee

into the prison mail system by the Court's June 8 deadline.[5]  (*See* Order, No. 14-cv-1102,

ECF No. 3) (directing Petitioner to file the fee or an IFP application within thirty days of May

8, 2014).  Had Petitioner filed a reply to the State's brief in opposition to his motion, he

perhaps could have provided a more specific explanation for why he believes the mail records

are relevant, but he did not do so.  Because Winkfield has failed to give sufficient reasons for

the request, as required by Rule 6(b), the Court does not find good cause for the discovery.

The motion for a subpoena is therefore **DENIED**.

---

[5] Petitioner does not assert in his motion, or in any earlier submission, that he tried
mailing the $5 fee any time before mid-July of 2014, well beyond the Court's June 8 deadline.
(*See e.g.*, Opp. to Mo. Dismiss Ex. 1, ECF No. 22-1) (receipt dated July 18, 2014, for $5 filing
fee).

Even without mail records, however, Petitioner could have filed an affidavit, signed under penalty of perjury, attesting to the date he submitted his IFP application to Ms. Smith and his efforts to secure the application from her once it became apparent to him that he might not meet the Court's filing deadline.  He has not done so.  Moreover, in his only submission on the issue in the present case—his sur-reply in opposition to the motion dismiss—dates relating to Ms. Smith are conspicuously absent among his detailed recitation of dates relating to other events.  He also mentions nothing about his diligence in trying to secure the completed application from Ms. Smith.  (*See* Sur-reply, ECF No. 22 at 1-2.)  Petitioner's motion for reconsideration, filed in his first case, suffers from the same lack of detail.  (*See* Mo. Reconsid., No. 14-cv-1102, ECF No. 9 at 1) ("The Petitioner submitted a[n] *in forma pauperis* form to the Hardeman County Inmate Trust Fund to [s]taff employee Ms. Smith for a six month Transaction Statement.  Through no fault of his own, Petitioner never received the six month transaction statement from Inmate Trust Fund.").  Moreover, as the Court's deadline approached, Petitioner did not notify the Court that he needed more time, such as through a motion for an extension of time.  *See e.g., Solomon*, 467 F.3d 928 at 933-34 (petitioner was entitled to equitable tolling where he established that he exercised reasonable diligence, including by informing the district court that prison restrictions would cause him to file late).

Because there is no evidence before the Court regarding the timeframe of Petitioner's interactions with Ms. Smith or his diligence in trying to meet the Court's deadline despite her alleged delay, he has failed to establish that he is entitled to equitable tolling of the AEDPA's

one-year limitations period.  His claims must therefore be **DISMISSED**.[6]

## B.  Merits Review and Procedural Default

Even if Petitioner were entitled to equitable tolling of the limitations period, none of his claims would warrant relief.

### 1.  Legal Standards

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the AEDPA.  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A § 2254 claim challenging the petitioner's custody or sentence on state-law grounds thus fails to state a federal habeas claim. *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (writ of habeas corpus may not issue "on the basis of a perceived error of state law") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

---

[6] Even if Petitioner were entitled to equitable tolling, only the late filing of the claims contained in the August 2014 petition would be excused; the untimely filing of Claims 6 and 7 in December of 2014 would not be.  Claims 6 and 7 are different in "time and type" from the claims asserted in the August 2014 petition, and thus do not relate back to that petition.  *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 849-50 (6th Cir. 2017) (supplemental claim that trial counsel was ineffective in failing to secure psychiatric evaluation did not relate back to petition which alleged that counsel was ineffective in failing to investigate and raise a defense).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A state court's factual determination is not "unreasonable" for purposes of § 2254(d)(2) merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quotation marks and citation omitted). State-court factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), but "proper[]" exhaustion.  *Boerckel*, 526 U.S. at 848.  A claim is properly exhausted when it is "fairly presented" through "one complete round of the State's established appellate review process."  *Id.*

The exhaustion requirement works in tandem with the procedural default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts.  *Id.* at 848.  Broadly speaking, procedural default happens in two ways.  A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to "fairly present" the claim through "one complete round" of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits.  *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007).  *See also Boerckel*, 526 U.S. at 846, 848.  Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case."  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729.

It is only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," that a federal court will review the merits of a claim that was procedurally defaulted.  *Coleman*, 501 U.S. at 748 (citing *Murray v. Carrier,* 477 U.S. 478, 496 (1986)).  The ineffectiveness of post-conviction counsel may be

cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Martinez v. Ryan*, 566 U.S. 1, 7 (2012); *Trevino v. Thaler*, --U.S.--, 133 S. Ct. 1911, 1918 (2013); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### 2. Claim 1: Sufficiency of the Evidence

Winkfield alleges that the TCCA's determination that the evidence was sufficient to convict him of second decree murder and tampering with evidence was objectively unreasonable. (Am. Pet., ECF No. 9 at 5.) Specifically, he argues that "the shooting occurred during daylight, and no witness for the state gave testimonial evidence that the Petitioner was seen in the area immediately following the shooting of the victim." (Pet. Br., ECF No. 9-2 at 10.) Winkfield also points out that there was not "any type of physical evidence recovered from the crime scene or DNA profile found at the crime scene that matched the Petitioner's DNA profile that identified the Petitioner as being the perpetrator in this case." (*Id.*) With regard to his conviction for tampering with evidence, Petitioner argues that there was no evidence "that [he] knew that an investigation [was] in progress." (*Id.*)

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and therefore governs Winkfield's claim. *See Coleman v. Johnson*, -- U.S.--, 132 S.Ct. 2060, 2062 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)); *Appanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (same). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The AEDPA adds a layer of deference to *Jackson*'s already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to," or "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254 (d)(1), or "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 132 S. Ct. at 2065.

Winkfield is not entitled to relief under the AEDPA on his evidence-sufficiency claim. First, the TCCA's determination was not "contrary to" *Jackson*. 28 U.S.C. § 2254(d)(1). Although citing to state cases, the TCCA correctly identified the evidence-sufficiency standards set forth in *Jackson* and applied them to the facts. *See Winkfield*, 2010 WL 796917, at *9-10. A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

Second, the TCCA's evidence-sufficiency determination was not based on an unreasonable determination of the facts or an unreasonable application of *Jackson*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). Although there was no physical evidence or eyewitness placing Winkfield at the crime scene, evidence that he was the perpetrator included McGee's testimony regarding his statements and demeanor immediately following the murder and Futrell's testimony that he confessed to the crime. As to the tampering charge, the jury

16

could easily infer the defendant's knowledge of the investigation and subsequent disposal or destruction of the pistol from evidence that he had been in possession of the gun and it was never recovered during the course of the investigation.  Because *Jackson* reserves for the jury the tasks of "weigh[ing] the evidence . . . and . . . draw[ing] reasonable inferences from the basic facts to the ultimate facts," *Jackson*, 433 U.S. at 319, the TCCA reasonably refused to disturb the jury's factual determinations.    In addition, the determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted.

Because Claim 1 is untimely, and is otherwise without merit, it is **DENIED**.

### 3.   Claim 2: Prior Testimony

Petitioner alleges that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. at 87.  (Am. Pet., ECF No. 9 at 7.)  Specifically, he complains that the prosecution at his second trial failed to disclose, prior to trial, its intention to introduce testimony he gave at his first trial.  (*Id.*; Pet. Br., ECF No. 9-2 at 11-13.)  The judge in the second trial allowed the government to introduce the testimony over the objection of Winkfield's counsel.  (Tr. Trans., ECF No. 16-7 at 5-42.)

Petitioner did not raise a *Brady* claim on direct or post-conviction appeal.  The time allowed under state law to present the claim has passed.  *See* TENN. R. APP. P. 3(e); Tenn Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief and setting forth "one-petition rule").  Winkfield thus procedurally defaulted the claim, *see Boerckel*, 526 U.S. at 848, and he does not argue cause and prejudice to excuse the default.

In any event, the claim is without merit.  Under *Brady,* "due process requires the prosecution to turn over evidence favorable to the accused and material to his guilt or

punishment." *Connick v. Thompson* 563 U.S. 51, 79 (2011) (Ginsburg, J., dissenting) (citing *Brady*, 373 U.S. at 87). To establish a *Brady* violation, a petitioner must show "(1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ... ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (internal quotation marks omitted). Here, the evidence was not suppressed by the prosecution; the government's failure to disclose, prior to trial, its intent to use evidence already known to the defense is not the same as suppression of evidence. *See generally Hall v. Russell*, 339 F. App'x 576, 578 (6th Cir. 2009) ("There is no *Brady* violation where the defense knew . . . of the exculpatory information . . . .") (citing *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998)).

Although not clear from his submissions, Petitioner may mean to assert that the TCCA's decision to uphold the admission of the prior testimony into evidence was contrary to or an unreasonable application of clearly established Supreme Court law regarding a defendant's constitutional right against compulsory self-incrimination. That claim, too, would be without merit.

The Fifth Amendment's "Self-incrimination Clause provides that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'" *United States v. Balsys*, 524 U.S. 666, 671 (1998) (quoting U.S. Const., amend. 5). The privilege generally does not disturb "the evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Harrison v. United States*, 392 U.S. 219, 222 (1968). The constitutional privilege and the evidentiary rule are usually compatible because "[a] defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives . . . ." *Id.* The evidentiary rule must yield, however, to a criminal

defendant's right against the prosecution's use of "wrongfully obtained" evidence.  *Id.*   In *Harrison*, the defendant's prior testimony was compelled by the prosecution's introduction of an illegal confession, and was therefore inadmissible notwithstanding the evidentiary rule allowing the use of prior testimony.  *Id.* at 222-23.

On direct appeal, the TCCA rejected Winkfield's argument that the admission of his prior testimony at the second trial violated both the state's evidentiary rule allowing the introduction of prior testimony and his constitutional right against self-incrimination.  *See Winkfield*, 2010 WL 796917, at *5–7.  The TCCA's constitutional determination was not "contrary to" *Harrison* because the court correctly identified the principles announced in that case and applied them to the facts of Winkfield's case.  *See Winkfield*, 2010 WL 796917, at *5–7.

Moreover, the TCCA's decision was not based on an unreasonable determination of the facts or an unreasonable application of *Harrison* to those facts.  *See* 28 U.S.C. §§ 2254(d)(1) and (2).  The lower court's finding that Petitioner voluntarily took the stand at his first trial is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Winkfield has not submitted.  The TCCA credited the lower court's finding and determined that, in light of the absence of "illegally obtained incriminating evidence" in Petitioner's case, the defendant's circumstances did not fit into *Harrison*'s narrow exception to the use of prior testimony.  *Winkfield*, 2010 WL 796917, at *7.  That determination was not objectively unreasonable.  *See generally Gardner v. Foltz*, 857 F.2d 1474 (6th Cir. 1988) (per curiam) (habeas relief not warranted on petitioner's claim that trial court improperly introduced at his second trial the testimony he gave at his first trial, where, unlike in *Harrison*, prior testimony was "not induced as a result of a defect of reversible proportion," but was motivated by desire to present a defense).

Claim 2 is **DENIED** as untimely and otherwise without merit.

### 4. Claim 3: Exclusion of Evidence

Petitioner challenges "the TCCA's decision that the trial court did not err[] by excluding from evidence Terrence McGee's MySpace picture," which contained the caption "Armed and Dangerous." (Am. Pet., ECF No. 9 at 8.) Defense counsel had sought to introduce the evidence for the purpose of impeaching the witness's truthfulness. (*See* Mo. Introduce, ECF No. 16-1 at 66-68.) *See also Winkfield*, 2010 WL 796917, at *8. Petitioner argues that exclusion of the evidence denied him his right to due process under the Fourteenth Amendment and his right to confront the witness "in violation of the Confrontation Clause of the Sixth Amendment." (Pet. Br., ECF No. 9-2 at 16.)[7]

Under the Sixth Amendment's Confrontation Clause, "the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses "includes the right to cross-examine those witnesses." *Pointer v. Texas,* 380 U.S. 400, 404 (1965). The "denial or significant diminution" of a defendant's right of cross-examination "calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973) (quoting *Berger v. California,* 393 U.S. 314, 315 (1969)). Accordingly, "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Id.* at 294.

---

[7] The amended petition and supporting brief also reference the Supreme Court's decision in *Brady v. Maryland*. (*See* Am. Pet., ECF No. 9 at 8; Pet. Br., ECF No. 9-2 at 14-15.) Because the MySpace page was defense evidence, and not information suppressed by the government, the Court does not construe Claim 3 as a traditional *Brady* claim. The thrust of Claim 3, as well as Petitioner's argument in support of the claim, is that the trial court's evidentiary ruling, affirmed by the TCCA, violated Winkfield's due process and Confrontation Clause rights by depriving him of the use of favorable impeachment evidence.

The right to cross-examine witnesses, however, "is not absolute." *Id.* at 295. As the Supreme Court has explained, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

Petitioner's claim is procedurally defaulted. As noted, a petitioner procedurally defaults a claim if he did not "fairly present" it to the highest available state court, and the time for doing do has passed. *Baldwin*, 541 U.S. at 32-33; *Boerckel*, 526 U.S. at 848. Petitioner did not fairly present an argument on direct appeal to the TCCA that the trial court's exclusion of the MySpace page violated his constitutional rights. His argument, instead, was that the exclusion of the evidence violated Tennessee Rule of Evidence 608. Specifically, he argued the application of Rule 608 to the facts; asserted only generally that the trial court's decision "was an unreasonable restriction on [his] right to cross-examine one of the State's main witnesses"; did not point to a specific constitutional provision; and did not otherwise argue that the trial court committed an error of constitutional magnitude. (*See* Dir. Appeal Br., ECF No. 16-16 at 6, 32-34.) He thus did not fairly present the claim to the state appellate court. *See McMeans v. Brigano*, 228 F. 3d 674, 681 (6th Cir. 2000). Because the time for doing so has passed, *see* Tenn. Code Ann. § 40-30-106(g), and because Winkfield has not asserted cause for the default, the claim is not reviewable in this habeas proceeding.

Claim 3, which is untimely and procedurally defaulted, is **DENIED.**

**5. Claim 4: Sentencing**

Petitioner contends in Claim 4 that his twenty-five year sentence for first degree murder violates his constitutional rights as annunciated under *Apprendi v. New Jersey*, 530

U.S. 66 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  (Am. Pet., ECF No. 9 at 10.)  Specifically, he argues that enhancement factors used by the trial court to sentence him "to the statutory maximum," were "never submitted to a jury and proven beyond a reasonable doubt."  (*Id.*)

Petitioner did not present this constitutional issue to the state appellate court, but only challenged his sentence under the Tennessee sentencing statute.  (Dir. App. Br., ECF No. 11-10 at 15-23.)  The claim is thus procedurally defaulted.  Because Winkfield has not asserted cause to excuse the default, Claim 4 is **DENIED**.

Even if Petitioner had not defaulted the claim, he would not prevail.  Winkfield was sentenced under Tennessee's 2005 amended sentencing act, Tenn. Code Ann. § 40-35-2010(c) (2005 Suppl.), which "encounters no Sixth Amendment shoal" under *Apprendi/Blakely*. *Cunningham v. California,* 549 U.S. 270, 294 & n. 18 (2007) (internal quotation marks omitted).

Claim 4 is **DENIED** as untimely, procedurally defaulted, and without merit.

### 6. Claim 5: Ineffective Assistance of Counsel Regarding Factual Investigation and Development

In Claim 5 Winkfield challenges the TCCA's determination that his attorneys were not ineffective by failing to present proof concerning the distance between the college and the victim's house and DNA analysis of McGee's clothing and a knife found at the scene.  (Am. Pet., ECF No. 9 at 11.)  In his supporting brief, however, he seems to broaden his challenge to the whole of the TCCA's determination that his trial counsels had not been ineffective in numerous respects.  (*See* Pet. Br., ECF No. 9-2 at 19-21.)  Petitioner also asserts that the TCCA's decision was based on an unreasonable factual determination by the trial court "that trial counsels investigated the facts and witnesses relevant to the case."  (*Id.*) (quoting *Winkfield*, 2013 WL 6001929, at *9.)  To support his challenge to that factual finding, Winkfield points to

22

evidence in the post-conviction record that he insists proves his trial attorneys were unprepared: one counsel's admission that "[h]e had not anticipated that the Petitioner's testimony from his first trial would be introduced at his second trial." (*Id.* at 19-20.)

A claim that the ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Petitioner has not shown that he is entitled to relief under the AEDPA on Claim 5. First, the TCCA's determination was not "contrary to" *Strickland,* 28 U.S.C. § 2254(d)(1), because the TCCA expressly invoked *Strickland* and applied its two-part test to the facts. *See Winkfield*, 2013 WL 6001929, at *7–8.

Second, the TCCA's ineffective-assistance determination was not based on an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2). Crediting the testimonies of Petitioner's trial attorneys, the post-conviction court found that the attorneys had investigated facts and witnesses. *Winkfield*, 2013 WL 6001929, at *6, 8. Petitioner argues that the factual finding is undermined by the admission by one of his trial attorneys that he did not anticipate the prosecution's use of the defendant's prior testimony. (*See* Atty. Googe Test., P-C Trans., ECF No. 16-22 at 119). The state court's factual determination is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). In light of the entirety of the testimonies of Petitioner's trial attorneys, counsel's

acknowledgment that he failed to anticipate the state's use of the prior testimony is not clear and convincing proof that he had not adequately prepared the case.  The TCCA's determination that the record supported the lower court's factual finding is therefore not objectively unreasonable.[8]

Finally, the TCCA's determination was not based on an unreasonable application of *Strickland*'s standards to the facts adduced at the post-conviction hearing.  *See* 28 U.S.C. § 2254(d)(1).  Because Petitioner's trial attorneys were found to have investigated the facts and potential witnesses, the TCCA's determination that their performances were not deficient is not objectively unreasonable.

Claim 5 is untimely, and is otherwise without merit.  The claim is therefore **DENIED**.

### 7.  Claims 6 and 7: Ineffective Assistance of Post-Conviction and Trial Counsel Relating to Prosecutorial Misconduct

Winkfield insists that the prosecutor at his second trial engaged in misconduct by giving his opinion at closing argument that Winkfield shot "the victim in his leg because the victim tried to run before being killed."  (Am. Pet., ECF No. 9-1 at 3.)  Claim 6 alleges that Petitioner's "post-conviction [a]ttorney . . . rendered ineffective assistance of counsel during the post-conviction proceeding when [he] intentionally defaulted [the] . . . [p]rosecutorial [m]isconduct claim."  (*Id.* at 1.)  The Court construes Petitioner's amended petition as also alleging, as Claim 7, that trial counsel was ineffective for failing to object to the prosecutor's comment.  (*See id.* at 5.)

Even if the claims were timely, Winkfield would not be entitled to relief.  First, Claim 6 is not cognizable.  There is no constitutional right to post-conviction counsel.  *Coleman*, 501

---

[8] The post-conviction judge, who was the same judge who presided over the trials, found that counsel's failure to anticipate the prosecution's use of Winkfield's prior testimony was not deficient performance and did not prejudice him.  Petitioner's attorneys "did everything they could possibly do to convince this Court that I should not allow that former testimony to be admitted and I overruled their objections."  (P-C Trans., ECF No. 16-22 at 125.)

U.S. at 752. "[A] petitioner," therefore, "cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.*

Second, although cognizable, Claim 7 is procedurally defaulted. Petitioner acknowledges he defaulted the claim, but argues that the ineffectiveness of his post-conviction counsel is cause to excuse the default. (Am. Pet., ECF No. 9-1 at 1-2.) The argument is without merit because Winkfield's ineffective-assistance-of-trial-counsel claim is not "substantial," as required to overcome the default. *Martinez*, 132 S. Ct. at 1313; *Trevino v. Thaler*, --U.S.--, 133 S. Ct. 1911, 1918 (2013). Under *Strickland*, deficient performance that does not prejudice the defendant is not ineffective-assistance. *Strickland*, 466 U.S. at 694. As the post-conviction trial court noted, the evidence against Winkfield was strong. (*See* P-C Trans., ECF No. 16-22 at 132.) Petitioner has not made even a colorable argument that, had trial counsel objected to the prosecution's statement, "he probably would not have been convicted . . . ." *Erkins v. Chuvalas*, No. 15-3942, 2017 WL 1162927, at *5–6 (6th Cir. Mar. 28, 2017) (citing *Strickland*, 466 U.S. at 694).

Claim 6 is **DENIED** as untimely and non-cognizable. Claim 7 is **DENIED** as untimely and procedurally defaulted.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); FED. R. APP. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253 (c) (2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322,

336 (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). If the district court rejects a claim on a procedural ground, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478.

In this case, reasonable jurists would not debate the correctness of the Court's procedural rulings or whether the petition should have been resolved in a different manner. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. FED. R. APP. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.

**IT IS SO ORDERED**.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 24, 2017.